O’CONNELL, Justice.
The claimant, respondent here, is the widow of the deceased employee, John W. Thaxton. She made claim for death benefits, alleging that her husband died as a result of radical surgery necessitated by a hernia, which he sustained while working for one of the petitioners, Johnson Drug Company. The deputy commissioner, affirmed by the full commission, ruled in her favor, whereupon the employer and its carrier have petitioned this Court for review.
Thaxton, the decedent, on May 2, 1956, while lifting a ladder in the course of his employment suffered an immediate pain in the left inguinal region. He reported this to his employer who sent him to Dr. A. R. Beyer. Dr. Beyer diagnosed decedent’s condition as a possible left inguinal hernia and told him to return in two or three days for further examination.
Decedent, on Saturday, May 5, 1956 told his wife, the claimant that he was going back to see Dr. Beyer. He then appeared in the office of Dr. James A. Winslow, which office was in the same building as Dr. Beyer’s, just down the hall. Decedent had been under Dr. Winslow’s treatment for approximately two years for a heart condition, which condition was known to-his employer.
Dr. Winslow testified that decedent informed him of his injury and told him Dr. Beyer was not in his office. He complained of acute pain in his left groin and upon examination it was discovered he had an exquisitely tender mass in that area. Dr. Winslow diagnosed an incarcerated hernia, requiring immediate surgery regardless of the fact decedent was a poor risk for surgery due to his heart trouble. As he is not a surgeon, he called another doctor, Dr. T. H. Garth, who affirmed the diagnosis of incarcerated hernia. Dr. Garth’s attempts, made in Dr. Winslow’s-office, to reduce the hernia failed and Thaxton was immediately admitted to the-hospital for emergency surgery.
Thaxton, upon being readied for surgery, suffered severe angina. It was necessary to give him nitroglycerin for relief' before he could be anesthetized. Dr. Garth-expressed doubt that the pain in the groin-precipitated this attack but theorized that the stress and emotion concerned with the impending operation may have.
The operation was performed, resulting-in the discovery that there was a rather *160 small hernia which was not incarcerated. It was discovered that decedent was suffering' from a painful case of epididymitis. The surgeon repaired the hernia and removed the spermatic cord and one testicle, both of which were diseased. The incision was closed and bandaged and it was then discovered that the patient’s stomach was greatly stretched and inflated; he had ■swallowed several quarts of the anesthetic gas. Dr. Garth testified that the stretching of the stomach probably caused the patient’s blood pressure to drop, through the stimulus of the vagus nerve. The patient then went into shock and despite efforts to save him died in about an hour and a half.
It is well substantiated that Thaxton’s ■death was caused by myocardial infarction. The complications and shock of the .operation aggravated decedent’s pre-existing diseased coronary and arterial system, causing death.
It is also apparent that the cause of the mass and pain in decedent’s left groin was the diseased spermatic cord rather than •the simple hernia.
Dr. Winslow and Dr. Garth were of the •conviction the operation was essential for under their diagnosis of incarcerated hernia the decedent had little chance of survival regardless of his heart condition unless •the hernia was repaired immediately. That is the reason the operation was performed •with the knowledge decedent had a diseased heart and was, in fact, suffering severe angina at the time of the operation itself. It becomes equally certain that had .a correct diagnosis been made of decedent, no operation would have been risked, at that moment, at least, to treat his epididy-mitis.
The deputy concluded there was causal ■connection between decedent’s injury, the hernia, the surgery, and the death. He :said:
“ * * * Although the deceased was found to be suffering from epididymitis rather than hernia, he had had a hernia with symptoms of incarcerated hernia requiring emergency surgery regardless of other factors involved. The epididymitis would have been treated conservatively. Had there been no hernia or history of hernia there would have been no opportunity to diagnose an incarcerated hernia, the subsequent emergency nor the complications thereof.”
In response to the carrier’s contention that it was not liable for death benefits because the operation had not been authorized by it, the deputy reasoned that in view of the emergency and the fact Dr. Beyer could not be found, it would be unreasonable to require specific authorization to see another physician.
Under the authority of Section 440.09 (1), F.S.A. the deputy ordered an award of death benefits to the respondent, decedent’s widow. The full commission affirmed.
Petitioners argue that the deputy erred in finding that decedent’s hernia was causally connected with an accident arising out of and in the course of his employment. It is our conclusion that the findings of the deputy are amply supported by the record on this point.
Petitioners also argue that the deputy erred in finding that the death of the decedent was the causal result of the hernia and that decedent, because of the emergency, was relieved from securing medical and surgical treatment from the surgeon furnished by the employer.
It is apparent that decedent’s death was not caused directly by the hernia itself but was caused by the shock and complications of the operation which was in actuality not necessitated by the hernia. The finding of an “emergency” and the resulting, fatal operation were purely the results of an incorrect diagnosis made by decedent’s physicians. It is also our opinion that had the employer’s physician, Dr. Beyer, incorrectly diagnosed decedent’s *161 trouble as an incarcerated hernia, the employer would have been liable for the consequences of the resulting operation. This result would be the logical effect of Section 440.09(1), F.S.A., which provides in part:
“ * * * Death resulting from an operation by a surgeon furnished by the employer for the cure of hernia as required in subsection (6) of § 440.15 shall for the purpose of this chapter be considered as a death resulting from the accident causing the hernia. * * ”
The question resolves to be whether the petitioners are liable in this case where the incorrect diagnosis was not made by the employer’s physician and the operation was not performed with the knowledge and consent of the employer.
This of course is not a case where the employer “failed, refused or neglected,” after request, to provide the care needed, for Section 440.13, F.S.A. would authorize the injured workman in that case to seek treatment from some other physician.
Consequently, the real question is whether the petitioners are liable for the fatal consequences of the incorrect diagnosis because their physician, who had correctly diagnosed a hernia, was unavailable at the time when decedent was suffering from what he thought was his hernia and doctors Winslow arid Garth were under the mistaken belief the hernia had become incarcerated.
We are of the opinion the petitioners should not be held liable under these circumstances.
In the first instance, the evidence that Dr. Beyer was unavailable is not substantial. Dr. Winslow was rather vague in his testimony as to this matter. He said decedent told him Dr. Beyer was absent from his office but Dr. Winslow could not say that he actually attempted to locate Dr. Beyer. There is no contention that either he or decedent attempted to contact decedent’s employer or carrier. The only other testimony to the effect decedent tried to locate Dr. Beyer was that of the claimant. She asserted that on the morning of the day of the operation and decedent’s death he left their home with the intention of going to see Dr. Beyer. Furthermore, from a letter written by Dr. Beyer and filed into evidence, it appears that an insurance adjuster had talked to him by telephone on the day of the operation and death, which would indicate he was not “unavailable.”
However, even if it were to be firmly established Dr. Beyer was absent and could not be located, we do not find that the circumstances were such as to create an emergency which was the result of the accident, the hernia. The record quite clearly shows that the symptoms which were taken as those of an incarcerated hernia were caused by the diseased spermatic cord and not by the simple hernia.
It is our opinion that the false “emergency” was a break in the chain of causation in this case. Decedent’s death was the direct result of a cause unconnected with his employment. To say that the death was but the end link of a chain of causation to the hernia induced by accident is to rely upon too flimsy a connecting link. It would be necessary to say that had it not been for the accident (the strain upon lifting the ladder), the resulting hernia, the absence of Dr. Beyer from his office, the incorrect diagnosis by the other physicians, and the complications of the operation, there would have been no myocardial infarction in the decedent, who had an existing diseased heart. Had the hernia itself actually caused the symptoms resulting in the diagnosis made by Dr. Winslow, perhaps the chain would have borne the weight of the ruling of the deputy and the full commission.
In 5 Schneider, Workmen’s Compensation, Sec. 1477 it is stated that compensation will be awarded when death or permanent injury is the direct result of an operation for a compensable hernia. The author then states:
*162 “ * * * The courts, however, are cautious in their examination of the ■evidence in cases of this type and where there is insufficient proof of a direct causal relationship between the operation and the death or permanent injury, compensation will be denied.”
The instant case falls within the category of 1 Larson’s Workmen’s Compensation, Sec. 13.23, which says that if the employee, without notifying his employer, obtains surgery privately which produces permanent disability, such disability may be held to be non-compensable, citing Baeza v. Remington Arms Co., 1950, 122 Colo. 510, 224 P.2d 223. Larson in Vol. 2, Sec. 61.12, of course recognizes that the existence of an emergency may entitle the claimant to obtain his own medical care, without waiting for the employer to furnish such.
Petitioners have sought to have the order of the full commission quashed. They have asserted ah initio that the hernia was not shown to have been causally connected with an accident arising out of and in the course of his employment, with which contention we have already expressed our lack of agreement. The question might arise whether petitioners are entitled to partial relief, at least, but that question was not specifically treated by the parties to this review. That question is whether the petitioners should be held liable for the costs of the medical care rendered by doctors Winslow and Garth and the costs incidental to the surgery. The deputy ordered them to pay “the costs of medical care incurred as a result of his injury and subsequent surgery.” There is no question as to the petitioners’ liability for medical care rendered decedent by Dr. Beyer.
In his order, the deputy commissioner said:
“ * * * Even assuming that under F.S. 440.13 the employee was not entitled to reimbursement for monies paid for such medical care, there is no provision of the workmen’s compensation law relieving the carrier of liability from complications resulting from medical care that was unauthorized.”
The deputy then, as seen above, held the carrier liable for such medical care, apparently deciding that Section 440.13 does not require notice to or special authorization by the employer or carrier. In this respect he erred.
The first portion of Section 440.13, F.S.A. would perhaps indicate that the employer and its carrier would be liable for costs of medical care required, whether they had knowledge of such need or not or had been requested to furnish such care. This portion of the statute reads:
“(1) The employer shall furnish to the employee such remedial treatment, care, and attendance under the direction and supervision of a qualified physician or surgeon, or other recognized practitioner, nurse or hospital, and for such period, as the nature of the injury or the process of recovery may require, including medicines, crutches, artificial members, and other apparatus * * *»
Our opinion in Lyng v. Rao, Fla.1956, 87 So.2d 108, 110 might give the same impression. In that case this Court ruled that the carrier should have paid the bill rendered “for the care and treatment of the claimant regardless of who rendered such services, provided such services were rendered in connection with the treatment and care of the injuries received in the accident” (emphasis ours). The employer in that case happened to be a physician, doing business as a hospital, and he rendered the services himself. Consequently, the case is not one in which the 'employer did not consent to the medical care or have knowledge thereof.
We find that other language employed in Section 440.13, F.S.A., which language follows that portion of the statute quoted above, makes it mandatory for the em *163 ployee to request the employer to furnish the medical care or that the employer have knowledge of the need for such care, yet fail to provide it. Only then will the employee be entitled to seek the care from other sources and hold the employer liable for the costs thereof. This requirement may not be applicable in cases of first aid or where in actuality there is an emergency relating to the injury, but we are not compelled to rule thereon in this case, where we have determined there was no such emergency. This portion of Section 440.13(1) reads as follows:
“ * * * If the employer fails to provide the same after request by the injured employee, such injured employee may do so at the expense of the employer, the reasonableness and the necessity to be approved by the commission. The employee shall not be entitled to recover any amount expended by him for such treatment or service, unless he shall have requested the employer to furnish the same and the employer shall have failed, refused or neglected to do so, or unless the nature of the injury required such treatment, nursing and services and the employer or his superintendent or foreman having knowledge of such injury shall have neglected to provide the same. *• * * ”
Having concluded that the deputy erred in ordering the payment of the medical care incurred as a result of the surgery and payment of the death benefits, the petition for writ of certiorari is hereby granted and the order of the full commission affirming the deputy’s order is quashed. The cause is remanded to the full commission for further proceedings consistent herewith.
THOMAS, C. J., and ROBERTS, DREW and THORNAL, JJ., concur.
TERRELL and HOBSON, JJ., dissent.